## Snyder's Estate

*Arthur C. Dale,* for exceptant.
*Johnston & Johnston,* contra.

FLEMING, P. J., May 29, 1936.—This matter is before us upon exceptions filed to the first and final account of Emma S. Cooke, executrix, as stated by The Bellefonte Trust Company, her guardian. From the record we make the following

### Findings of fact

1. Mary H. Snyder, a resident of Bellefonte Borough, died testate on September 26, 1935, having first made her last will and testament, bearing date March 14, 1928, wherein Emma S. Cooke was named executrix.

2. Said last will and testament was duly probated in the office of the Register of Wills of Centre County on October 8, 1935, and letters testamentary duly issued to Emma S. Cooke.

3. Emma S. Cooke, executrix as aforesaid, proceeded forthwith to administer the estate according to law and the terms of said last will and testament and had fully completed such administration, paying all bequests and claims against the estate, including expenses of adminis-

tration and inheritance taxes, before her adjudication as an incompetent as hereinafter stated.

4. Emma S. Cooke, after proceedings duly and properly had in the Court of Common Pleas of Centre County, was adjudicated an incompetent, and The Bellefonte Trust Company of Bellefonte, Pa., was appointed her guardian as of May 4, 1936.

5. The Bellefonte Trust Company of Bellefonte, Pa., duly qualified as such guardian.

6. The Bellefonte Trust Company of Bellefonte, Pa., stated and filed the first and final account of Emma S. Cooke, executrix of the last will and testament of Mary H. Snyder, deceased, in the Orphans' Court of Centre County.

7. Exceptions were filed to said account by Jeanette Cooke Dailey, who is the only surviving child of Emma S. Cooke.

9. Jeanette Cooke Dailey is neither a beneficiary under the will of Mary H. Snyder, deceased, nor a creditor of the estate.

10. Emma S. Cooke is a widow.

### Discussion

Two major questions present themselves for solution: (1) Does the guardian of the executrix, now an incompetent, have the authority to state and file her account as such executrix? (2) Does Jeanette Cooke Dailey have the right to file exceptions to such account? We shall consider these questions in the order stated.

1. Does the guardian of the executrix, now an incompetent, have the authority to state and file her account as such executrix? A brief historical consideration of the subject of mental illness may assist in deciding this question.

The common-law right and duty of the King to receive the property of a subject becoming non compos mentis, and to look after his person and estate, together with the statutes enacted in relation thereto, were supplanted in Pennsylvania by the Act of June 13, 1836, P. L. 589. This

act directed the issuance of a commission, in the nature of a writ de lunatico inquirendo, to inquire into the lunacy or habitual drunkenness of any person within the State or who possessed real or personal property therein. The term "lunatic" was defined to include every person of unsound mind, whether he may have been such from his nativity, as idiots, or had become such from any cause whatsoever. Upon an adjudication as such, a committee was named by the court for such person. This committee was authorized to look after the management of the real and personal estate of the lunatic and also, from time to time, to apply so much of the income thereof as should be necessary for the payment of the just debts and engagements and for the support and maintenance of such person and his family and for the education of his minor children.

Such legislation, involving as it did the liberty of the individual as to his person and property, quite naturally brought about much uncertainty as to the exact line marking lunacy, as provided by the act, on one side, and mere weakness of mind on the other. Beginning with McElroy's Case, 6 W. & S. 451, and continuing until the enactment of the Act of June 25, 1895, P. L. 300, there was difficulty in determining whether such person was a "lunatic" in the meaning of the Act of 1836, or whether such person was merely "eccentric" or "weak-minded" or something else but less than a "lunatic". At that time there was no provision concerning those in this last-named class, and to provide therefor the Act of 1895, supra, was enacted. This act provided that proper procedure should be had for the protection of "any person, being a citizen of this State, [who] shall become or be so weak in mind, that he or she is utterly unable to take care of his or her property and is therefore liable to dissipate or lose the same and to become the victim of designing persons". This is better stated in the words of Chief Justice Mitchell in Hoffman's Estate, 209 Pa. 357, 359, wherein he says that the Act of 1895 extended the protection of the State to the property of a class of persons whose mental condition

is "intermediate between normal mental capacity and insanity or idiocy, a state of weak or enfeebled mind, neither mens·sana nor non compos mentis."

Section 6 of the Act of 1895, supra, bestows upon guardians the same powers and duties "as the guardian of the property of minors in the State of Pennsylvania". This throws little light upon the question under consideration, for it is clear that a minor cannot state an account for himself or for anyone else. However, the Act of May 28, 1907, P. L. 292, the act under which Mrs. Cooke was adjudicated in the common pleas and which is, in effect, a reënactment of the Act of 1895, supra, and its supplements, restates the powers and duties of guardians as being the same "as a committee on lunacy in the State of Pennsylvania."

Committees in lunacy, as we have noted, are empowered to manage the real and personal estate of the lunatic. In the instant case there is no family to be provided for and no children to educate. There is ample to provide for Mrs. Cooke's expenses and for her care and maintenance.

We have reviewed this matter historically, seeking some light on the question before us. We have found that Mrs. Cooke's guardian has the statutory power to manage her real and personal estate. 1 Bouvier's Law Dictionary (Rawle's 3d rev.) 1075, defining·"estate", says:

"But as the word is commonly used in the settlement of estates, it does include the debts as well as the assets of a bankrupt or decedent, all his obligations and resources being regarded as one entirety."

There was an obligation upon Mrs. Cooke not only to administer the estate of the decedent but to account for that administration. The administration was complete before her incompetency. But two administrative acts remained to be done, viz., the titular transfer of the decedent's bank accounts, an act without which distribution never can be had, and the filing of an account. These were obligations upon Mrs. Cooke which required no exercise of discretion, obligations in default of which her per-

sonal assets might become prejudiced. As such obligations, they were part of her estate, the management of which was conferred by statute upon her guardian, as has been shown.

The exceptant points to section 46 ($g$) of the Fiduciaries Act of June 7, 1917, P. L. 447, in support of the contention that the guardian, having been appointed in the common pleas, had no power to state and file an account for Mrs. Cooke in the orphans' court. A careful reading of this section will clearly show that it does not support such contention. The guardian in the instant case is not seeking to file its own account in the orphans' court: it is seeking in the regular course of the management of Mrs. Cooke's estate to fulfill her legal obligation and to file her account in such court. The section says:

"All trustees who are subject to the jurisdiction of the orphans' court shall file their accounts in the court appointing them, or, in the case of testamentary trustees, in the orphans' court of the county where the will is or shall be probated."

Again we point out that the guardian is not seeking to file its own account in this court: it is seeking to file Mrs. Cooke's account herein, and this is the court of her appointment. The section cited continues:

"The orphans' court shall have exclusive jurisdiction of the accounts of all trustees appointed by such court, and of all testamentary trustees, whether such trusts are vested in executors or administrators virtute officii or in trustees named in the will".

Again we repeat that this court is being given exclusive jurisdiction of Mrs. Cooke's, not the guardian's, account. No effort is being made or attempted to deprive the orphans' court of jurisdiction. The best evidence of that fact is that the account is here before us.

The exceptant further contends that letters of administration de bonis non cum testamento annexo should be issued to the exceptant and that she, then, should account for Mrs. Cooke, turning over such balances as may be

shown by her account to the guardian when such account is confirmed. The absurdity of this contention is patent for several reasons.

The admitted facts must be considered: (1) The estate is finally settled so far as the payment of expenses and bequests to parties other than Mrs. Cooke is concerned; (2) Mrs. Cooke, while incompetent, is still a person in being; (3) Mrs. Cooke is the sole residuary legatee under the will; (4) no attempt has been made to vacate the letters testamentary issued to Mrs. Cooke; (5) the balance shown by the account, whatever it may be, is payable to the guardian as the representative of Mrs. Cooke.

In Garman's Estate, 211 Pa. 264, at page 266, Mr. Justice Elkin says:

"Counsel for the appellant answers by saying the administrator de bonis non cum testamento annexo, under the provisions of section 31 of the Act of February 24, 1834, P. L. 70, is entitled to the whole fund. If this is the necessary construction of said act then a peculiar result follows, for it means that the fund now ready for distribution in a court of competent jurisdiction, all the debts of the testator having been paid and there being no debtors to or other claimants against said estate, must be awarded, not to the legatees and distributees, but to the administrator de bonis non appointed after these proceedings commenced. If the award is so made, then this appellant must file the same account in the same court, and the same court will be asked to make a distribution among the same parties. Certainly the provisions of said act relative thereto do not require such a meaningless thing to be done. There must be a finality to such proceedings, and in this case all that part of the estate ready for distribution should be considered as settled, and hence the provisions of section 31 of said act do not apply."

Again, in Wagner's Estate, 227 Pa. 460, at page 465, Mr. Justice Mestrezat, citing Garman's Estate, supra, says:

"An administrator de bonis non has a right to the possession of such property and funds, unless distribution is the only matter necessary to complete the administration of the estate".

These pronouncements, being founded in solid common sense and reason, are equally applicable to existing enactments as to the statutes in force at the time of their utterance.

Section 53($a$) of the Fiduciaries Act of 1917, supra, provides:

"Any orphans' court having jurisdiction of the accounts of executors, administrators, guardians, or trustees shall have exclusive power to remove such executor or administrator and vacate the letters testamentary or of administration, or to remove such guardian or trustee, as the circumstances of the case may require, in any of the following cases. . . .

"2. When such fiduciary has been duly declared a lunatic, habitual drunkard, or weak-minded person".

No such proceeding has been had in this court and there is therefore no vacancy to necessitate the award of letters of administration de bonis non cum testamento annexo.

2. Does Jeanette Cooke Dailey have a right to file exceptions to this account? Mrs. Dailey is not a beneficiary under the last will and testament of Mary H. Snyder, deceased, nor is she a creditor of the said estate. She does not aver that she has been injured or prejudiced in any manner by the account filed. She is, therefore, without right to except to the account filed.

### Conclusions of law

1. The Bellefonte Trust Company, guardian of Emma Stone Cooke, a weak-minded person, has authority to state and file the account of the said Emma Stone Cooke, as executrix of the estate of Mary H. Snyder, deceased.

2. Letters of administration de bonis non cum testamento annexo are not legally necessary or awardable.

3. The exceptant has no legal status to file exceptions to the account of the executrix of the estate of Mary H. Snyder, deceased, as stated by The Bellefonte Trust Company, her guardian.

4. The exceptions are dismissed.

5. The exceptant shall pay the costs of this proceeding.

6. A decree of distribution will be made according to the prayer of the petition filed herewith.

### Decree nisi

And now, May 29, 1936, the exceptions are dismissed and the account confirmed absolutely. Costs to be paid by the exceptant.                    From Musser W. Gettig, Bellefonte.